# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **JOHN BATTAGLIA** § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> **BRYAN COLLIER,** § <br> Executive Director, § <br> Texas Department of Criminal § <br> Justice, § <br> § <br> **LORIE DAVIS,** § <br> Director, Correctional Institutions § <br> Division, § <br> Texas Department of Criminal § <br> Justice, § <br> § <br> **JAMES JONES,** § <br> Senior Warden, Huntsville Unit § <br> Huntsville, Texas, § <br> § <br> and § <br> § <br> **UNKNOWN EXECUTIONERS;** § <br> Defendants. § <br> § <br> § <br> § | **CIVIL ACTION NO. _____** <br><br><br> **DEATH PENALTY CASE** <br><br><br> **PLAINTIFF JOHN BATTAGLIA IS SCHEDULED FOR EXECUTION TODAY, FEBRUARY 1, 2018.** |

# PLAINTIFF'S' MOTION FOR PRELIMINARY INJUNCTION
# OR IN THE ALTERNATIVE, A TEMPORARY RESTRAINING ORDER

# INTRODUCTION

On January 18, 2018, the State of Texas executed Anthony Shore. During the execution, Mr. Shore's body shook, and he cried out "Ohhh weee, I can feel that it does burn. Burning!"

Thirty-six hours ago, on January 30, 2018, the State of Texas executed William Rayford. During the execution, Mr. Rayford attempted to raise his body, was shaking, exhibited signs of strained breathing, grimaced, and jerked his head into the gurney numerous times.

Defendants intend to carry out Mr. Battaglia's execution tonight, February 1, 2018, with the same compounded pentobarbital used to carry out the torturous executions of Mr. Shore and Mr. Rayford. The drugs are over a year older than any scientifically acceptable "beyond-use date." Indeed, Texas previously declared that this batch of drugs would expire on January 22, 2018, and then, without precedent or meaningful explanation, had them tested a second time a month ago, and set forth a new expiration date: November 2018.

The symptoms exhibited by Mr. Shore and Mr. Rayford correspond with those caused by the use of expired drugs that, as a result, have become contaminated, degraded, or sub-potent.

To carry out Mr. Battaglia's execution with these same drugs knowingly subjects him to a substantial risk of cruel and unusual punishment. He seeks this Court's intervention.

## RELEVANT FACTS

**A.  Significant Developments in the Last 36 Hours that Separate This Case from Previous Cases and Compel this Filing.**

In the evening of January 30, 2018 – approximately 36 hours ago – Texas executed William Rayford. Witnesses at Mr. Rayford's execution describe the following:

> [After the drugs were administered] William raised the upper part of his body to about 30 degrees. He was shaking and looked at me as if he wanted to say something, as if in distress, as if asking for help. . . He slowly went back down on the table, still shaking.
> Several times I felt that now he was going to really fall asleep as we were told would happen, but then he would start breathing heavier again.
> The shaking occurred more than once, but I am not sure how many times it happened. Several times I thought that William would wake up completely again because of the way he was breathing, at times gently and then heavier again. It was not like going to sleep.

*See* Exhibit H.

> When they started to administer the drugs to Mr. Rayford, his body jerked up, and he faced his friends in the witness area. He tried to say a few words, but they were slurred and I couldn't understand them.
> When the drugs entered Mr. Rayford, his eyelids twitched, and then his head jerked back into the pillow.
> After Mr. Rayford's head jerked into the pillow a couple of times like this, he lifted his head again. This time his face was twisted into a grimace. His eyes were squinted, and his face was tensed. It's hard to describe but Mr. Rayford was clearly in severe pain.

> Then, his head jerked back into the pillow again, and his body continued to shake.
> Mr. Rayford breathed heavily and unevenly for a while until we could no longer hear him breathing.

*See* Exhibit I.

On January 18, 2018, Texas executed Anthony Shore. That execution, Like Mr. Rayford's, did not proceed according to plan. Shortly after the drugs were administered, "Mr. Shore's body started to tremble." Ex. K. When the drugs entered Mr. Shore's body, Mr. Shore strained to say, "Ohh weeee, I can feel that it does burn. Burning!" Witnesses heard Mr. Shore's voice become louder and agitated as he said these words. Ex. J, K. After saying those words, Mr. Shore struggled to breathe. *See* Ex. K. When the witnesses left the execution chamber, the chaplain said, "That's the first time I've heard anyone say they are burning."

According to the information supplied by defendants, the State of Texas intends to use the same drugs administered to Mr. Rayford and Mr. Shore to carry out Mr. Battaglia's execution.

Plaintiff Battaglia sent Defendants a Public Information Act request on January 24, 2018, requesting information about the drugs that will be used to carry out his execution. In response, he received the documents contained in Exhibit B. Counsel for Mr. Rayford and Mr. Shore also submitted PIA requests; the responses

received are contained in Exhibit C (Rayford), Exhibit E (Shore's first request, in October 2017) and Exhibit D (Shore's second request, in January 2018).

The essential facts in the responses to the four Public Information Act requests relevant to Mr. Battaglia's claims are set out in the table below:

| Prisoner | Scheduled Execution | StorageLog Provided | DEA 222 Provided | Lab Report Provided | Assigned BUD |
|---|---|---|---|---|---|
| Anthony Shore (Ex. G) | 10/18/17 | 50mg/ml / 2.5 gr. Log | 11 vials 2/2/17 | Rec'd: 2/8/17 Tests: 2/9-10/17 | 1/22/18 |
| Anthony Shore (Ex. F) | 1/18/18 | 100mg/ml / 5 gr. Log | 11 vials 2/2/17 | Rec'd: 2/8/17 Tests: 2/9-10/17 | 1/22/18 |
| William Rayford (Ex. E) | 1/30/18 | 100mg/ml / 5 gr. Log | 11 vials 2/2/17 | Rec'd : 12/22/17 Tests: 12/26/17; 12/27/17; 1/9/18 | 11/9/18 |
| John Battaglia (Ex. D) | 2/1/18 | 100mg/ml / 5 gr. Log | 11 vials 2/2/17 | Rec'd : 12/22/17 Tests: 12/26/17; 12/27/17; 1/9/18 | 11/9/18 |

As the Table makes clear, Defendants provided the same DEA Form 222 each time, reflecting that the drugs used to carry out the executions of Mr. Shore and Mr. Rayford – and intended for use in Mr. Battaglia's execution - were received on 2/22/17. However, testing of those drugs was conducted at two

different times, each resulting in the assignment of a new expiration date. Thus, the same set of drugs were simply subjected to a new round of tests to extend a one-year BUD (1/22/18) to one that is a full twenty-two months from the time of compounding (11/9/18).

Mr. Shore's and Mr. Rayford's actions and behavior at the time of their executions reflect the severe pain they suffered, pain that results from the use of the same drugs that Defendants intend to use to carry out Mr. Battaglia's execution.

These facts – fully revealed in only the past 36 hours – compel Mr. Battaglia to file this action to protect his constitutional rights.

**B.   Texas's Execution Protocol**

Since July 2012, Texas has executed condemned prisoners with a single dose of what it alleges to be pentobarbital, made by one or more undisclosed and non-FDA-regulated compounding pharmacies, and composed of unknown ingredients whose sources Defendants also hide. *See* Exhibit A (July 2012 Execution Protocol). Defendants have not provided sufficient testing data to show that the doses of the substance with which they intend to carry out Plaintiff's execution is pure, potent, and sterile. *See* Exhibit B (Redacted Laboratory Report, which does not make clear *which* doses of pentobarbital were tested).

## C. Compounded Pentobarbital

In September 2013 Texas began purchasing and using compounded – rather than manufactured - pentobarbital to carry out executions. Upon information and belief, Texas continues only to use compounded pentobarbital to this day.

The United States Pharmacopeia ("USP") classifies compounded pentobarbital as a high-risk sterile injectable. *See* USP General Chapter <797>, Pharmaceutical Compounding – Sterile Preparations;[1] Exhibit F (Ruble Report) at 3-4.

Pentobarbital is especially risky in its compounded form, both because of the unregulated nature of the compounding industry, and because there is no scientific

---

[1] The USP is the seminal scientific advisory publication concerning the compounding of sterile injectables.

[2] *See, e.g.*, *Hill v. Owen,* No. 2013-CV-23771 at *3 (GA Sup. Ct. July 18, 2013) (" [W]hile Defendants do indeed have an interest in carrying out a sentence timely, the injury that would be sustained by Plaintiff if he were to be executed in such a way that violated his Eighth Amendment right would far surpass that of Defendants having to put off Plaintiff's execution another time."); *Valle v. State of Florida*, 70 So.3d 525 (Fla. July 25, 2011) (granting preliminary injunction pending an evidentiary hearing on the constitutionality of the change to the execution protocol); *Arthur v. Thomas,* No. 11-15548 at *3 (11th Cir. Mar. 23, 2011) (issuing preliminary injunction to allow courts time to review changes to the execution protocol); Order, *Taylor v. Crawford*, No. 2:05-cv-04173-FJG at 13 (W.D. Mo. June 26, 2006) (concluding that "it is within [the Court's] equitable powers to fashion a remedy that 'preserves both the State's interest in proceeding with Plaintiff's execution and Plaintiff's constitutional right not to be subject to an undue risk of extreme pain'" and staying executions pending revision of protocol) (quoting *Morales*, 415 F. Supp.2d at 1046)); Opinion and Order, *Cooey v. Taft*, No. 2:04-cv-01156 at *9 (S.D. Ohio Dec. 21, 2006) ("The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison [of that to the plaintiff] . . . . Any delay in carrying out [the plaintiff's] execution should and can be minimal."); Order, *Brown v. Beck*, slip op., 2006 WL 3914717, No. 5:06-ct-03018-H at *14; Order Allowing Preliminary Injunction, *Robinson v. Beck*, No. 07 CVS 001109 (Wake County Super. Ct. Jan. 25, 2007) (granting preliminary

description of, or formula for, the process of compounding pentobarbital for use in executions.

Compounded preparations have a much shorter "shelf life" than manufactured drugs, and are assigned a "beyond use date," (BUD) intended to prevent degradation of a compound that the USP has calculated is likely to occur after a set time frame. Absent extended sterility testing, USP <797> sets the BUD for high-risk compounded sterile preparations such as compounded pentobarbital as follows:

- 24 hours, if stored at room temperature,
- 72 hours, if kept refrigerated, or
- 45 days, if kept in a solid, frozen state

Upon information and belief, Defendants keep the lethal injection drugs at room temperature or refrigerated, but not frozen.

The integrity, potency, and sterility of compounded pentobarbital are affected by, among other things: the quality of the active pharmaceutical ingredient ("API") used to make the drug; the quality of the compounder and the conditions of the laboratory in which the drug is compounded; the time between compounding and use; the conditions and manner of storage between compounding and use; the assigned beyond use date ("BUD") and the qualifications of and method used by the person assigning the same. See Ex. F (Ruble Report) at 4-5.

Compounded pentobarbital that has surpassed its recommended BUD has a high risk of improper potency, composition, contaminants, impurities, and degradation. These risks grow as the length of time beyond the BUD increases. *See* Ex. F at 6-7.

According to the limited information made available to Plaintiffs, the State typically receives the compounded pentobarbital many months to a year before it uses the drug for an execution. Because of this delay and the limited tests conducted, there is a substantial risk of degradation of the potency and purity of the drug before its use by, for example, the introduction of bacterial endotoxins. *Id*.

**D.    The Risks of Using Compounded Pentobarbital that is Beyond its Use Date.**

There is a substantial risk that drugs that are not the appropriate potency or composition, are contaminated, degraded, or contain impurities, will cause excruciating pain at the time of their administration. *See* Ex. G (Report of Dr. Waisel) at 3-5. Among the symptoms the prisoner may suffer are "periods of difficulty breathing, which would feel like suffocating to death," *id*., "significant venous irritation," *id*. at 5; and "extraordinary pain." *Id*.

### STANDARDS GOVERNING INJUNCTIVE RELIEF

A preliminary injunction should issue if the plaintiffs establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015). Though a preliminary injunction is an "extraordinary remedy," it is necessary in cases such as this one, where it is imperative that the Court "preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

## ARGUMENT

### I. Plaintiff is Likely to Succeed on the Merits.

Plaintiff is likely to succeed on his Eighth Amendment claim. The amendment's ban on cruel and unusual punishment "guarantees that no one should be subject to an execution that causes searing, unnecessary pain before death." *Ladd v. Livingston*, 777 F.3d 286, 289–90 (5th Cir. 2015) (citation omitted). To succeed on this claim at the preliminary injunction stage, Plaintiff must "establish a likelihood that they can establish both that [the state's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015).

Here, there is a substantial risk of severe pain, as documented by the suffering endured by Mr. Rayford and Mr. Shore, and the fact that Defendants intend to carry out Mr. Battaglia's execution with the same drugs.  Similarly, on January 9, 2014, Oklahoma executed Michael Lee Wilson using compounded pentobarbital as part of the protocol. Prior to losing consciousness, Mr. Wilson cried out, "I feel my whole body burning."

Second, Plaintiff presents two known and readily available alternatives to the compounded pentobarbital that the State has stated it will use:  *See* Complaint, p. 13.  The first is a single dose of an FDA-approved barbiturate, applied with appropriate safeguards and transparency that apply to both the execution process and the manner in which the drugs are selected, purchased, stored, and tested.  The second known and available alternative is the use of compounded pentobarbital that is compounded in a competent facility, tested for sterility and potency and contaminants by a competent laboratory, and used within the BUD the United States Pharmacopeia has designated as scientifically appropriate.   Both alternatives are "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737.

**II.	Plaintiff's claim that Defendants have failed to Conduct Adequate or Competent Testing, thereby Subjecting Plaintiff to a Substantial Risk of Severe Pain at the Time of his Execution, is likely to Succeed.**

As detailed and documented above, Defendants are using compounded drugs that they admit are far beyond their accepted use date. Whatever person or laboratory is conducting that testing and establishing the patently unscientific BUD is not competent or viable. The consequences are clearly revealed in the suffering endured by Mr. Shore and Mr. Rayford. Defendants have failed to conduct adequate testing or apply sufficient safeguards; as a result, Mr. Battaglia is subjected to a substantial risk of severe pain at the time of his execution.

Because Plaintiff is likely to succeed on multiple claims, this Court should grant the requested preliminary injunction.

### III. Plaintiff will suffer irreparable, and unconstitutional, harm absent preliminary injunctive relief.

In addition to showing that he is likely to win on the merits, Plaintiff must also show that he will suffer irreparable harm if the injunction is not granted. *Texas v. United States*, 809 F.3d 13 at 150 (5th Cir. 2015). Here, the irreparable harm is clear. Using contaminated or degraded compounded pentobarbital is likely to lead to significant severe pain in violation of the Eighth Amendment, similar to that suffered by Mr. Shore and Mr. Battaglia.

### IV. The balance of equities supports the request for preliminary injunction.

The third element for a preliminary injunction is that the balance of the equities weighs in favor of granting injunctive relief.  *Texas v. United States*, 809 F.3d at 150.  The potential harms suffered by Plaintiff—pain amounting to torture at the time of his execution—outweigh the "harms" facing the Defendants if the injunction is granted.  As described above, the harms facing Plaintiff are significant.  In contrast, because Plaintiff seeks only narrow injunctive relief, the burden to Defendants is minimal.

Other courts have held that the balance of the equities favored a grant of an injunction in similar circumstances.[2]

---

[2] *See, e.g.*, *Hill v. Owen,* No. 2013-CV-23771 at *3 (GA Sup. Ct. July 18, 2013) ("[W]hile Defendants do indeed have an interest in carrying out a sentence timely, the injury that would be sustained by Plaintiff if he were to be executed in such a way that violated his Eighth Amendment right would far surpass that of Defendants having to put off Plaintiff's execution another time."); *Valle v. State of Florida*, 70 So.3d 525 (Fla. July 25, 2011) (granting preliminary injunction pending an evidentiary hearing on the constitutionality of the change to the execution protocol); *Arthur v. Thomas,* No. 11-15548 at *3 (11th Cir. Mar. 23, 2011) (issuing preliminary injunction to allow courts time to review changes to the execution protocol); Order, *Taylor v. Crawford*, No. 2:05-cv-04173-FJG at 13 (W.D. Mo. June 26, 2006) (concluding that "it is within [the Court's] equitable powers to fashion a remedy that 'preserves both the State's interest in proceeding with Plaintiff's execution and Plaintiff's constitutional right not to be subject to an undue risk of extreme pain'" and staying executions pending revision of protocol) (quoting *Morales*, 415 F. Supp.2d at 1046)); Opinion and Order, *Cooey v. Taft*, No. 2:04-cv-01156 at *9 (S.D. Ohio Dec. 21, 2006) ("The Court is not persuaded that issuance of the preliminary injunction will cause substantial harm to the State by comparison [of that to the plaintiff] . . . . Any delay in carrying out [the plaintiff's] execution should and can be minimal."); Order, *Brown v. Beck*, slip op., 2006 WL 3914717, No. 5:06-ct-03018-H  at *14;  Order Allowing Preliminary Injunction, *Robinson v. Beck*, No. 07 CVS 001109 (Wake County Super. Ct. Jan. 25, 2007) (granting preliminary injunctive relief pending proper approval of revised lethal injection protocol).

Because the Plaintiff will suffer serious harm without injunctive relief – harm that far outweighs the potential harm to Defendants – the preliminary injunction should be granted.

**V.     There is a strong public interest in carrying out death sentences in a procedurally fair manner without causing unconstitutional, cruel and unusual pain during executions.**

Lastly, the preliminary injunction should be granted because there is a strong public interest in conducting executions in a constitutional, transparent manner. Courts have recognized that "the public interest in carrying out criminal sentences is strong. On the other hand, the public also has an interest in not carrying out cruel and unusual punishment or terminating human life prematurely." *Alley v. Little*, 447 F.3d 976, 978 (6th Cir. 2006). Similarly, a Texas federal court of this district held that "it is apparent to this Court that confidence in the humane application of the governing laws of the State must be in the public's interest. It is, on the other hand, beyond the Court's comprehension that a temporary restraining order in this case, that would delay but not halt the execution, could disserve the public interest." *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) (granting the TRO). The Harris Court further explained that "no significant harm to the public interest could arise from the proper, informed, deliberate adjudication of this claim." *Id.* An order requiring the State to test the compounded pentobarbital

shortly before the Plaintiff's execution dates would similarly serve the public interest.

## **CONCLUSION AND PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant him the narrow preliminary injunctive relief requested. Specifically, Plaintiff requests that:

(1) This Court order the Defendants to refrain from carrying out Mr. Battaglia's execution with the drugs currently in Defendants' Possession; and

(2) This Court order Defendants to immediately disclose all information regarding the procurement of the drugs Defendants intend to use to carry out Plaintiff's execution; Clarification of which drugs are tested, and when they were compounded; details regarding the testing that has been conducted, what kind, by whom (i.e. the laboratory that did the testing, as well as the accreditations of the laboratory and the people working in the laboratory); and how the beyond use date is established.

Respectfully Submitted,

*/s/ Gregory W. Gardner*
Gregory W. Gardner
Bar ID No. 2707338
P.O. Box 2366
Boulder, Colorado 80306
(303) 990-5910
ggardner@gwgardnerlaw.com
gardnerlegal@gmail.com (PACER)


*/s/ Maurie Levin*
Maurie Levin
Attorney at Law
Texas Bar No. 00789452
614 South 4th Street #346
Philadelphia PA  19147

Tel: (512) 294-1540
Fax: (215) 733-9225
maurielevin@gmail.com

Patrick F. McCann
Law Offices of Patrick F. McCann
Texas Bar No. 00792680
700 Louisiana Street
Suite 3950
Houston, TX  77002
Tel:  713-223-3805
writlawyer@justice.com

*Attorneys for Plaintiff*


Dated this 1st day of February, 2018.

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February 2018 a true and correct copy of the above and forgoing Motion has been forwarded to counsel for the Defendants by electronic delivery to:

Sharon Howell
General Counsel
Texas Department of Criminal Justice
Sharon.howell@tdcj.state.tx.us

W. Eric Dryden
Assistant Attorney General
Office of the Texas Attorney General
Erich.dryden@oag.texas.gov

*/s/ Maurie Levin*